# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL CAISON,<br><br>              *Plaintiff*,<br><br>       v.<br><br>DOUG TULINO, *et al.*,<br><br>              *Defendants*. | Civil Action No. 23‑2414 (LLA) |

## <u>MEMORANDUM OPINION AND ORDER</u>

Proceeding pro se, Michael Caison brings this action against Doug Tulino, in his official capacity as Acting Postmaster General, and the U.S. Postal Service (collectively, the "USPS"). ECF No. 1.[1] Mr. Caison alleges that his employer, the USPS, discriminated against him, retaliated against him, and created a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ECF No. 1. Pending before the court are five motions— Mr. Caison's two motions for sanctions, ECF Nos. 22, 38, Mr. Caison's motion to strike the USPS's answer, ECF No. 26, the USPS's motion for partial judgment on the pleadings, ECF No. 27, and the USPS's motion to stay, ECF No. 29. For the reasons discussed below, the court will **DENY** Mr. Caison's motions for sanctions, **DENY** Mr. Caison's motion to strike, **GRANT IN PART** and **DENY IN PART** the USPS's motion for partial judgment on the pleadings, and **DENY AS MOOT** the USPS's motion to stay.

---

[1] Although Mr. Caison named former Postmaster General Louis DeJoy as a defendant, Acting Postmaster General Doug Tulino is "automatically substituted as a party" pursuant to Federal Rule of Civil Procedure 25(d).

# I.     FACTUAL BACKGROUND

In resolving the pending motion for judgment on the pleadings, the court will assume that the facts alleged in Mr. Caison's complaint are true.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *see also Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008); *Murphy v. Dep't of Air Force*, 326 F.R.D. 47, 49 (D.D.C. 2018).  Because Mr. Caison is proceeding pro se, the court will construe his pleadings liberally.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976))).  Additionally, the court will consider his complaint "'in light of' all filings."  *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)).  With these principles in mind, the relevant facts are as follows.

Mr. Caison, a Black man over the age of fifty, began working for the USPS in 2017.  ECF No. 1 ¶¶ 1-2.  He started as a Team Lead in charge of Alternate Quarters ("AQ") Leasing, a program within the USPS's Leasing Product Line.  *Id.* ¶ 1.  As a Team Lead, he supervised eight real estate specialists and was responsible for managing all newly leased space in the USPS's inventory.  *Id.* ¶¶ 5-6.  Within the Leasing Product Line, Mr. Caison was one of six supervisory employees.  *Id.* ¶ 3.  His direct manager was Karen LaFave.  *Id.*

In late 2018, Ms. LaFave directed Mr. Caison to investigate an allegation of inappropriate behavior made against an employee under Mr. Caison's supervision.  *Id.* ¶ 9.  Accordingly, Mr. Caison spoke with the employee about the incident and conducted research.  *Id.* ¶¶ 10-11.  Unable to corroborate the allegation, Mr. Caison recommended to Ms. LaFave and a Human Resources representative that the best course of action was to coach the employee without disciplinary action.  *Id.* ¶ 11.  Ms. LaFave disagreed, insisting that Mr. Caison issue a Letter of

Warning to the employee, and she threatened Mr. Caison with disciplinary action himself if he did not issue the warning. *Id.* ¶¶ 12-14. Despite his objections, Mr. Caison ultimately issued a Letter of Warning to the employee. *Id.* ¶ 17.

Around December 2018, the employee in question filed an Equal Employment Opportunity ("EEO") complaint against the USPS. *Id.* After Mr. Caison offered truthful testimony in the employee's EEO action, the USPS's attorney, seemingly begrudgingly, settled the claim. *Id.* ¶¶ 19-21.

The USPS blamed Mr. Caison for the settlement and "began a series of escalating discriminatory and retaliatory treatment" against him, including reducing his supervisory responsibilities, removing him from his role as a Team Lead, elevating white employees to replace him although they lacked the proper experience, and subjecting him to increased scrutiny, lower performance ratings, and lower pay increases. *Id.* at 1-2; *id.* ¶¶ 20, 22, 25, 29, 37-39, 41, 46, 51-52.

Mr. Caison alleges that, shortly after the employee's settlement, Ms. LaFave "began manufacturing time and attendance issues . . . leading to [Mr. Caison's] being issued a Letter of Warning himself for Failure to Obey." *Id.* ¶ 22. Yet, around the same time, the USPS recognized Mr. Caison with a "Spot Award" for increasing the performance of his team. *Id.* ¶ 24. In an attempt to resolve the issues with Ms. LaFave "in a more amicable manner," Mr. Caison participated in the USPS's mediation program, but such efforts proved ineffective. *Id.* ¶ 23.

In November 2019, Mr. Caison was informed that he was being moved to the Real Estate and Assets team, which was headed by Tom Russell, and he was instructed that he would report to David Rouse (a white man) and would supervise a smaller number of employees. *Id.* ¶¶ 28, 41. Mr. Caison did not receive an SF-50 Notice of Personnel Action regarding the transfer, and the

USPS did not update the organizational chart or Human Resources system to reflect the change. *Id.* ¶ 32.

Mr. Caison alleges that Mr. Russell "create[d] a shadow organization unofficially promoting white employees to [s]upervisory positions while at the same time reducing [Mr. Caison's] standing as a supervisor." *Id.* ¶ 26. Mr. Caison points to Sandra Rybicki, a white woman who was assigned to manage half of his former supervisees, as an example. *Id.* ¶ 30. At the time of this change, Ms. Rybicki was a real estate specialist and not a Team Lead. *Id.* Mr. Caison maintains that Ms. Rybicki "was not [his] peer" but was being offered as one by Mr. Russell "to create the appearance as a comparator." *Id.* ¶ 69.

Mr. Caison also alleges that Mr. Russell singled him out for "mistreatment unlike white colleagues." *Id.* at 9. The two had one of their first one-on-one conversations in December 2019. *Id.* ¶ 33. During that conversation, Mr. Russell told Mr. Caison: "Your team is not as good as you think they are." *Id.* Mr. Caison believes that the conversation with Mr. Russell was intended to "put [him] in his place." ECF No. 34-1, at 6.

On a separate occasion nearly a year later, Mr. Russell emailed Mr. Caison inquiring about the contents of external mail that had been delivered to Mr. Caison at his office. ECF No. 1 ¶ 36. This query "puzzl[ed] Mr. Caison" because he thought it was "strange that a routine piece of external mail addressed to [him] would generate an inquiry from a manager" so high in the chain of command. *Id.* (emphasis removed). An administrative employee thereafter told Mr. Caison that Mr. Russell had asked to be notified of any mail that was addressed to Mr. Caison, but not anyone else. *Id.* ¶¶ 37-38.

In October 2020, Mr. Russell relieved Mr. Caison of his supervisory duties and instructed him to perform the work of a real estate specialist. *Id.* ¶ 39. Mr. Russell reassigned Mr. Caison's

former team members to Mr. Rouse. *Id.* ¶ 41. Again, Mr. Caison did not receive an SF-50 Notice of Personnel Action regarding this change. *Id.* ¶ 40. Mr. Caison notified Mr. Rouse of his concerns regarding "his treatment . . . drawing a strong inference of animus," and Human Resources Manager Mardi Maru began investigating the matter. *Id.* ¶ 42.

In November 2020, Mr. Caison received his 2020 Pay for Performance ("PFP") evaluation, which provides USPS employees with salary increases and/or lump-sum payments based on their performance evaluations. *Id.* ¶ 46. He received a PFP score of five, which was below the average or target score of six and resulted in his receiving a smaller raise. *Id.* Mr. Caison states that "his evaluation failed to note any deficiencies in his performance" and instead "commend[ed] . . . his efforts." *Id.* ¶¶ 46, 49. Only one other employee on the team of twenty-six received a score under six. *Id.* ¶¶ 50, 86. Mr. Caison appealed his score to Mr. Rouse, who had performed the initial evaluation, and then to Mr. Rouse's supervisor, Mr. Russell. *Id.* ¶ 47.

In May 2021, Mr. Caison was informed that his position was being eliminated due to a Reduction in Force ("RIF") and that he would be reassigned to the lower-level position of a manager in the Landlord Maintenance Program. *Id.* ¶ 52. Mr. Caison was the only Team Lead in his program who was removed as a result of the RIF. *Id.* ¶ 53. Within Landlord Maintenance, he reported to two managers, one of whom was Black. *Id.* ¶ 82.

## II.    PROCEDURAL HISTORY

Mr. Caison filed a timely EEO complaint, which the USPS investigated. *Id.* ¶¶ 54, 63. The USPS issued a final agency decision finding no discrimination, and the Equal Employment Opportunity Commission ("EEOC") affirmed the agency's decision on appeal. *Id.* ¶¶ 63-65.

After exhausting his administrative remedies, Mr. Caison filed a four-count complaint against the USPS, alleging discrimination (Count I), retaliation (Count II), and hostile work

environment (Count III) in violation of Title VII, as well as a single violation of 18 U.S.C. § 1001 (Count IV).  *Id.* ¶¶ 74-107.  The USPS filed a motion to dismiss the complaint, ECF No. 13, arguing that Counts I-III were untimely and that Count IV failed on the merits, but, after Mr. Caison explained in his brief in opposition why Counts I-III were timely, ECF No. 16, the USPS withdrew the motion as it concerned Counts I-III, ECF No. 19.  In April 2024, the court dismissed Count IV.  ECF No. 21.  Shortly thereafter, Mr. Caison filed a motion for sanctions under Federal Rule of Civil Procedure 11, arguing that the USPS should not have moved to dismiss Counts I-III.  ECF No. 22.

The USPS filed an answer to Mr. Caison's complaint, ECF No. 25, which Mr. Caison moved to strike, ECF No. 26.  The USPS then filed a motion for partial judgment on the pleadings, requesting that the court enter judgment on Counts I and II and limit Count III to Mr. Caison's allegations concerning the removal of his job responsibilities.  ECF No. 27.  The USPS also moved to stay the case, ECF No. 29, and Mr. Caison filed a second motion for sanctions, ECF No. 38. All five motions are now ripe for consideration.  ECF Nos. 22 to 24, 26 to 32, 34, 36 to 40.

### III.    DISCUSSION

Despite the court's request that the parties litigate courteously, ECF No. 21, at 6, they have filed a series of motions, most of which appear to be speaking past each other.  The court will first address the USPS's motion for partial judgment on the pleadings—a standard motion in this type of case—before addressing the remaining motions.

### A.    The USPS's Rule 12(c) Motion

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  Such a motion "is designed to dispose of cases where the material facts are not in dispute

and a judgment on the merits can be rendered by looking at the substance of the pleadings and any judicially noted facts." *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016) (quoting *All. of Artists & Recording Cos. v. Gen. Motors Co.*, 162 F. Supp. 3d 8, 16 (D.D.C. 2016)).  "Because a Rule 12(c) motion would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation, the [c]ourt must treat [such a] motion with the greatest of care and deny it if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Id.* (second alteration in original) (quoting *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010)).

"To prevail on a Rule 12(c) motion, '[t]he moving party must show that no material issue of fact remains to be solved and that it is entitled to judgment as a matter of law.'" *Id.* (alteration in original) (quoting *Jud. Watch, Inc. v. U.S. Dep't of Energy*, 888 F. Supp. 2d 189, 191 (D.D.C. 2012)).  In considering the motion, "the court relies on 'the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.'" *Id.* at 392 (quoting *Allen v. U.S. Dep't of Educ.*, 755 F. Supp. 2d 122, 125 (D.D.C. 2010)).[2]  "[A]ll of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." *Id.* (quoting 5C Charles Alan Wright, et al., *Federal Practice and Procedure* § 1368 (3d ed. 2004)).  However, the court need not accept factual allegations in the complaint as true "insofar as they contradict . . . matters subject to judicial notice," *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004), nor is the court bound to accept the legal conclusions

---

[2] The court cannot, however, consider additional materials, such as the documents Mr. Caison appended to his opposition to the USPS's motion for partial judgment on the pleadings, ECF Nos. 34-1 to 34-13, because that would require converting the motion to one for summary judgment, which would be premature at this time.

of the non-moving party," *Tapp*, 306 F. Supp. 3d at 392 (quoting *Baumann*, 744 F. Supp. 2d at 222).

In its Rule 12(c) motion, the USPS argues that it is entitled to judgment on the pleadings on Mr. Caison's discrimination claim (Count I) and his hostile work environment claim (Count II), and to partial judgment on the pleadings on his retaliation claim (Count III) as it pertains to allegations other than the USPS's removal of Mr. Caison's job responsibilities. ECF No. 27.

## 1. Discrimination (Count I)

Under Title VII, it is unlawful for an employer to discriminate against an employee with respect to their "compensation, terms, conditions, or privileges of employment" because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff bringing a discrimination claim under Title VII must allege that he belongs to a protected class, that he suffered an adverse employment action, and that a causal connection exists between his protected characteristic and the adverse employment action. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). The USPS does not dispute that Mr. Caison has alleged the first two prongs—membership in a protected class and adverse action—but it argues that he has failed to "allege any facts from which one could infer that any alleged adverse action taken against [him] was because of discriminatory animus." ECF No. 27, at 3. The court disagrees.

One way that a plaintiff can allege a causal connection is "by showing 'that []he was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). In his complaint, Mr. Caison points to two comparators: (1) Ms. Rybicki, a white woman, who in November 2019 took over Mr. Caison's supervisory responsibilities for half of the real estate specialists on the AQ Leasing team even though she was less qualified than

Mr. Caison, ECF No. 1 ¶¶ 29-30; and (2) Mr. Rouse, a white male manager, who in October 2020 took over all supervisory responsibilities for the AQ Leasing team, *id.* ¶ 41.  The USPS argues that Ms. Rybicki and Mr. Rouse are not similarly situated to Mr. Caison because he has not alleged that "all [of] the relevant aspects of his . . . employment situation were 'nearly identical' to th[eirs]."  ECF No. 36, at 2 (quoting *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015)).  As examples of differences between Mr. Caison and his proffered comparators, the USPS points out that Mr. Caison was a Team Lead while Ms. Rybicki was not and that Mr. Caison and Mr. Rouse did not have the same position.  *Id.* at 3.

If this case were in a summary judgment posture, the court might be persuaded by the USPS's argument that Mr. Caison's proffered comparators are not similarly situated.  *See Burley*, 801 F.3d at 301.  But the court is presently considering a motion for judgment on the pleadings, and at this stage—and given Mr. Caison's pro se status—Mr. Caison has sufficiently alleged that similarly situated comparators who did not share his protected traits were treated more favorably.  *See Montgomery v. Omnisec Int'l Sec. Servs., Inc.*, 961 F. Supp. 2d 178, 183 (D.D.C. 2013) (denying a motion to dismiss where the pro se plaintiff pointed to less-experienced employees as comparators); *see also Harrington v. Pompeo*, No. 18-CV-1056, 2020 WL 5816217, at *4 (D.D.C. Sept. 30, 2020) (explaining that "on a motion to dismiss, a plaintiff need not plead every element of a prima facie case and need not plead specifics about comparators").  Accordingly, the court will deny the USPS's motion for judgment on the pleadings on Count I.

## 2.    Hostile Work Environment (Count II)

To support a hostile work environment claim, the plaintiff must allege that his "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working

environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "A few isolated incidents of offensive conduct do not amount to actionable harassment," *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002), and the incidents must be "adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts," *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (quoting *Baloch*, 550 F.3d at 1201).

In support of his hostile work environment claim, Mr. Caison alleges that (1) Mr. Russell told him that his "team was not as good as [he] think[s] they are," ECF No. 1 ¶ 33; (2) Mr. Russell scrutinized his receipt of external mail, *id.* ¶¶ 35-38; (3) he was relieved of his supervisory duties, *id.* ¶¶ 30, 39; (4) he received a lower-then-average rating and a smaller raise as a result, *id.* ¶¶ 46, 50-51; and (5) he was subjected to a RIF, *id.* ¶¶ 52-53. These are the type of "ordinary workplace tribulations" that fail to state a claim of hostile work environment. *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 37-38 (D.D.C. 2019); *see, e.g.*, *Reed-Morton v. Fudge*, No. 22-CV-1079, 2022 WL 16571237, at *9 (D.D.C. Nov. 1, 2022) ("[P]etty work-related actions—including negative evaluations, less favorable treatment in the workplace, hurtful comments, denial of training opportunities, close monitoring by supervisors, and reprimands—seldom create a hostile work environment, even when combined."); *Heavans v. Dodaro*, 648 F. Supp. 3d 1, 18 (D.D.C. 2022) ("Courts have frequently dismissed hostile work environment claims centered on similar allegations of conflict with a manager, occasional denial of privileges, changes to work

duties, and close scrutiny, as such occurrences are not sufficiently offensive, intimidating, or out of the ordinary in a typical workplace to change the conditions of the plaintiff's employment."). Accordingly, the court will grant the USPS's motion for judgment on the pleadings on Count II.

### 3.    Retaliation (Count III)

Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  A plaintiff must allege three elements for a Title VII retaliation claim: (1) that he engaged in protected activity (i.e., "opposed any practice" unlawful under Title VII or "made a charge, testified, assisted, or participated" in an "investigation, proceeding, or hearing," 42 U.S.C. § 2000e-3(a)); (2) that he suffered a "materially adverse" action that "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination,'" *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); and (3) that there is a causal connection between the protected activity and the materially adverse action, *see id.* at 67-69. An activity is considered "protected" by Title VII if it "involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd*, 573 F. App'x 1 (D.C. Cir. 2014) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 91-92 (D.D.C. 2006)).  The USPS does not dispute that Mr. Caison engaged in protected activity or that there is a causal connection, but it argues that—other than the allegations concerning the removal of his supervisory duties—Mr. Caison has failed to sufficiently allege materially adverse action. ECF No. 27, at 6-8.  The court agrees in part.

As noted, a "materially adverse action" is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Rochon*, 438 F.3d at 1219).  This is an objective standard that captures "significant"—rather than "trivial"—harms.  *Id.*  "Typically, a materially adverse action in the workplace involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"  *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

In addition to the removal of his supervisory responsibilities, which the USPS concedes is sufficiently adverse, ECF No. 27, at 7, Mr. Caison alleges that he suffered materially adverse action when he was subjected to increased criticism and scrutiny.  ECF No. 1, at 1-2; *id.* ¶¶ 22, 33, 35-38.  Increased scrutiny at work generally does not qualify as a materially adverse action unless it "is so extreme and intrusive as to constitute harassment in its own right." *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 134 (D.D.C. 2016).  In this case, Mr. Caison's allegations about receiving a Letter of Warning, ECF No. 1 ¶ 22, and having Mr. Russell scrutinize his team and his receipt of external mail, *id.* ¶¶ 33, 35-38, are neither "extreme" nor "intrusive." *Aldrich*, 197 F. Supp. 3d at 134.  And while Mr. Caison argues that he was singled out for this scrutiny, ECF No. 34, at 9, that is insufficient, without more, to constitute a materially adverse action, *Aldrich*, 197 F. Supp. 3d at 134.

Mr. Caison also alleges that he suffered materially adverse action when he received a lower-than-average performance evaluation, which led to a smaller raise.  ECF No. 1 ¶¶ 46-51.  A performance evaluation can be materially adverse where, as here, the plaintiff alleges that he experienced financial harm as a result. *Turner v. Buttigieg*, No. 23-CV-1665, 2024 WL 4346332,

at *9 (D.D.C. Sept. 30, 2024); *see Baloch*, 550 F.3d at 1199 (explaining that, in the retaliation context, "performance reviews typically constitute adverse actions . . . when attached to financial harms"). Accordingly, Mr. Caison's allegation that he received a smaller raise due to his performance evaluation, ECF No. 1 ¶ 51, is sufficient to withstand the USPS's motion for judgment on the pleadings.

*    *    *

For the reasons explained, the court will deny the USPS's motion for partial judgment on the pleadings on Count I, grant it as to Count II, and grant it in part on Count III to the extent that it awards judgment to the USPS on Mr. Caison's retaliation claim as it relates to criticism and heightened scrutiny at work, but it will allow Mr. Caison to proceed with his retaliation claim concerning the removal of his supervisory duties (including the RIF) and his smaller raise as a result of his lower-than-average performance evaluation.

### B.    Motions for Sanctions

Mr. Caison has filed two motions for sanctions under Federal Rule of Civil Procedure 11. ECF Nos. 22, 38. Rule 11 allows the court to sanction a party for advancing an argument that is frivolous or presented for an improper purpose. Fed. R. Civ. P. 11(b)(1)-(4), (c). The court is "'accorded wide discretion' in determining whether sanctions are appropriate." *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 n.2 (D.D.C. 2010) (quoting *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1174 (D.C. Cir. 1985)). Rule 11 sanctions are not to be imposed "lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings." *Jordan v. U.S. Dep't of Lab.*, 273 F. Supp. 3d 214, 241 (D.D.C. 2017); *see Trout v. Garrett*, 780 F. Supp. 1396, 1428 (D.D.C. 1991) (stating that "the blunt instrument of sanctions against individual attorneys ought to be applied with restraint"). The court will deny both motions as procedurally improper.

Mr. Caison's first motion for sanctions concerns the USPS's argument in its motion to dismiss that Counts I-III were untimely because Mr. Caison filed his complaint ninety-three days after the EEOC rendered its final decision. ECF No. 13, at 5-7; *see* 42 U.S.C. § 2000e-16(c) (requiring that a civil action be filed within ninety days of the plaintiff's receipt of notice of the EEOC's final action). After Mr. Caison explained in his opposition that he had received the EEOC's decision by mail, rather than electronically on the day it was issued, which entitled him to more time to file in court, the USPS withdrew its timeliness argument. ECF No. 19, at 1-2; *see Brewer v. District of Columbia*, 891 F. Supp. 2d 126, 132 (D.D.C. 2012) (recognizing the presumption that, "[a]bsent evidence indicating otherwise," courts presume that the EEOC decision was mailed on the day it was issued, and that "[i]f the delivery date is unknown," courts presume that the decision "was received 3 to 5 days after being mailed"). Despite the USPS's prompt withdrawal of its timeliness argument, Mr. Caison argues that sanctions are warranted because the USPS "had to willfully turn a blind eye to the certificate of service [accompanying the EEOC decision] clearly showing it was mailed to [him]." ECF No. 22, at 5 (emphasis removed). The trouble for Mr. Caison is that Rule 11 sanctions are not available in this circumstance. Under Rule 11(c)(2), a party "*must not*" file a motion for sanctions "if the challenged . . . claim . . . is withdrawn or appropriately corrected." Fed. R. Civ. P. 11(c)(2) (emphasis added). The USPS withdrew its timeliness argument nearly a month before Mr. Caison filed his sanctions motion. *Compare* ECF No. 19 (withdrawing timeliness argument on March 25, 2024), *with* ECF No. 22 (seeking sanctions on April 19, 2024). Accordingly, there was no legal basis for Mr. Caison to file his motion.

Mr. Caison's second motion for sanctions concerns statements in the USPS's answer, ECF No. 35, which Mr. Caison contends contains assertions that "are simply false and lack factual and

evidentiary support," ECF No. 38, at 1.  Before filing a sanctions motion directed at the USPS's answer, Mr. Caison was required to serve the motion on the USPS under Rule 5, but not file it in court until twenty-one days after service in order to provide the USPS the opportunity to withdraw or correct the language Mr. Caison found objectionable.  Fed. R. Civ. P. 11(c)(2).  As the USPS explains, Mr. Caison served a Rule 11 motion on December 27, 2024, ECF No. 39, at 10, but he filed a very different motion in court on January 21, 2025, *id.*; *see generally* ECF No. 39-8. Mr. Caison does not dispute this fact in his reply, and he has therefore conceded the issue.  *See Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  Accordingly, this sanctions motion was also procedurally deficient.

The court offers one final word on sanctions.  Under Rule 11, where the court determines that a sanctions motion is improper, it "may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."  Fed. R. Civ. P. 11(c)(2).  The USPS is the prevailing party on both of Mr. Caison's sanctions motions, and thus the court could order Mr. Caison to pay the USPS's costs and fees.  Given Mr. Caison's pro se status, the court will not do so on these two motions, but the court cautions Mr. Caison that it will not look favorably upon future motions—including motions for sanctions—that lack merit.  *See Ahuruonye v. U.S. Dep't of Interior*, 312 F. Supp. 3d 1, 26 n.22 (D.D.C. 2005) (explaining that "a frivolous Rule 11 sanction motion may itself be a violation of Rule 11" (quoting *Naegele v. Albers*, 355 F. Supp. 2d 129, 145 (D.D.C. 2005))).

### C.    Motion to Strike

Mr. Caison has moved to strike portions of the USPS's answer under Federal Rule of Civil Procedure 12(f), arguing that "certain claims [are] evasive and contrary to [Federal Rules of Civil Procedure] 8(b)(2) and 11(b)." ECF No. 26, at 1. The court will deny the motion.

A court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The decision to strike is "vested in the trial judge's sound discretion . . . however, a motion to strike is a drastic remedy that courts disfavor." *Shaw v. District of Columbia*, No. 17-CV-738, 2018 WL 5044248, at *2 (D.D.C. Sept. 11, 2018) (brackets omitted) (quoting *Gates v. District of Columbia*, 825 F. Supp. 2d 168, 169 (D.D.C. 2011)); *see United States v. Three Sums Totaling $612,168.23 in Seized U.S. Currency*, No. 19-CV-130, 2021 WL 2255310, at *4 (D.D.C. June 3, 2021) ("[A]bsent a 'strong reason for so doing,' courts will generally 'not tamper with pleadings.'" (quoting *Nwachukwu v. Rooney*, 362 F. Supp. 2d 183, 190 (D.D.C. 2005))). "In considering a motion to strike, courts will draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denial of the motion to strike." *Crawford v. Barr*, No. 17-CV-798, 2019 WL 6525652, at *4 (D.D.C. Dec. 4, 2019) (quoting *Moore v. United States*, 318 F. Supp. 3d 188, 190-91 (D.D.C. 2018)). Although Rule 12(f) does not require a showing of prejudice, "[o]nly if the allegations in [the pleading] are both irrelevant and prejudicial . . . will a motion to strike be granted." *Campaign Legal Ctr. v. Iowa Values*, 573 F. Supp. 3d 243, 252 (D.D.C. 2021). "In the rare instance that a motion to strike is granted, the submission to which it is directed 'should be pruned with care,' rather than completely scrapped." *Meyer v. Panera Bread Co.*, No. 17-CV-2565, 2018 WL 5017747, at *4 (D.D.C. Oct. 16, 2018) (quoting *Johnson v. M&M Commc'ns, Inc.*, 242 F.R.D. 187, 189 (D. Conn. 2007)).

Despite the plain language of Rule 12(f), Mr. Caison makes no argument that the USPS's answer contains "an insufficient defense or redundant, immaterial, impertinent, or scandalous matter." *See generally* ECF No. 26. That is enough reason for the court to deny the motion. But given Mr. Caison's pro se status, the court will engage with his arguments that the USPS's answer runs afoul of Rule 8(b) and Rule 11(b). The court can quickly dispense with Mr. Caison's Rule 11 argument because it fails for the reasons explained above. *See supra* Part III.B.

Concerning Mr. Caison's Rule 8 argument, Mr. Caison focuses on Rule 8(b)(2), which directs that, where a defendant denies an allegation, the "denial must fairly respond to the substance of the allegation." Fed. R. Civ. P. 8(b)(2). In doing so, he appears to ignore the rest of Rule 8(b), which permits the USPS to, *inter alia*, deny allegations in part, *id.* R. 8(b)(4), and state when it lacks sufficient knowledge or information to respond, *id.* R. 8(b)(5). For each allegation in Mr. Caison's complaint, the USPS provided an answer that complied with one of Rule 8(b)'s subsections. *See generally* ECF No. 25. While Mr. Caison calls the USPS's responses "egregious," ECF No. 26, at 1-2, 4, they are standard fare for an answer in an employment discrimination case like this one.

The purpose of a complaint and an answer is not to resolve the merits of the case, but to put the parties on notice of what is common ground, what is in dispute, and what requires further investigation through discovery. Mr. Caison's complaint and the USPS's answer have done just that.

### D.    Motion to Stay

While the parties were briefing their various motions, the USPS moved to stay proceedings until the court could resolve the USPS's motion for partial judgment on the pleadings, Mr. Caison's motion for sanctions, and Mr. Caison's motion to strike. ECF No. 29. Because the

court has resolved these motions, there is no need for a stay and the court will deny the USPS's motion as moot.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff's Motion for Sanctions, ECF No. 22, is **DENIED**; Plaintiff's Motion to Strike, ECF No. 26, is **DENIED**; Defendants' Motion for Partial Judgment on the Pleadings, ECF No. 27, is **GRANTED IN PART** and **DENIED IN PART**; Defendants' Motion to Stay, ECF No. 29, is **DENIED AS MOOT**; and Plaintiff's Second Motion for Sanctions, ECF No. 38, is **DENIED**.

It is further **ORDERED** that the parties shall contact Courtroom Deputy Clerk, Ms. Margaret Pham (Margaret_Pham@dcd.uscourts.gov) on or before April 11, 2025 and provide three agreed-upon dates for an Initial Scheduling Conference in May 2025.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 28, 2025